IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELIZABETH HARING COOMES,
    *Plaintiff.*

    v.

                            Civil No. ELH-22-02639

MICHAEL J. MORAN, et al.,
    *Defendants.*

**MEMORANDUM**

In this legal malpractice case, plaintiff Elizabeth Haring Coomes filed suit on October 13, 2022, against defendants Michael J. Moran, Esquire ("Mr. Moran") and The Law Offices of Michael J. Moran, P.C. (the "Firm") (collectively, "Moran"). ECF 1.[1] In an Amended Complaint (the "Complaint") filed on August 4, 2023 (ECF 35), plaintiff asserts "Professional Negligence" as to Mr. Moran (Count I) and the Firm (Count II).[2] In addition, plaintiff claims that defendants are liable for a violation of the automatic stay that resulted from plaintiff's filing of a Chapter 13 bankruptcy petition (Count III).[3]

Plaintiff's claims are rooted in defendants' failure to submit a brief to the Maryland Court of Appeals in connection with plaintiff's challenge to a decision of the Maryland Insurance Administration ("MIA"). The Maryland Court of Appeals, now known as the Supreme Court of

---

[1] Jurisdiction is predicated on diversity of citizenship under 28 U.S.C. § 1332.

[2] Defendants moved to dismiss the original Complaint, pursuant to Fed. R. Civ. P. 12(b)(5) and 4(m), as well as Local Rule 103.8. ECF 24. By Memorandum and Order of June 6, 2023, I denied the motion. ECF 27, ECF 28.

[3] The Complaint fails to identify the provision of the Bankruptcy Code that defendants allegedly violated.

Maryland ("SCM"), had granted certiorari in that matter.[4]   However, because of the failure of counsel to submit an appellate brief, the court dismissed plaintiff's case.

Plaintiff now seeks $30,000,000 in compensatory damages, prejudgment interest beginning on March 8, 2018, costs, punitive damages, and attorneys' fees.  ECF 35, ¶ 101.  As to the alleged violation of the Bankruptcy Code, plaintiff "demands judgment against Defendants for actual damages and punitive damages and against Defendants in favor of Ms. Coomes's attorneys for reasonable fees and costs . . ." as well as "any equitable relief this Court may determine fair and appropriate."  *Id.* at 13.

Defendants have moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b).  ECF 40. The motion is supported by a memorandum (ECF 40-1) (collectively, the "Motion") as well as one exhibit.  ECF 40-2.  Plaintiff opposes the Motion (ECF 43), supported by a memorandum (ECF 43-1) (collectively, the "Opposition").  Defendants have replied (ECF 46, the "Reply").  With the Reply, defendants submitted eleven exhibits.  ECF 46-1 to ECF 46-11.  According to Moran, the exhibits contain the record that would have been available to the Supreme Court of Maryland in regard to the appeal.[5]

---

[4] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland ("SCM").  The voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland ("ACM").  These changes went into effect on December 14, 2022.  *See* Press Release, *Voter-Approved Constitutional Change Renames High Courts to Supreme and Appellate Court of Maryland*, MARYLAND COURTS (Dec. 14, 2022), https://perma.cc/K87C-UUCG.

[5] The parties refer to the two Maryland appellate courts by their current names, even though the name changes had not occurred at the relevant time.  I shall generally refer to the courts by their names at the relevant time.  However, for consistency with the parties, I shall occasionally refer to the Maryland Court of Appeals as the Supreme Court of Maryland or SCM, and to the Maryland Court of Special Appeals as the Appellate Court of Maryland or ACM.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I.    Background[6]

Plaintiff alleges that in 2004 she "became a licensed insurance producer in the Commonwealth of Virginia."  ECF 35, ¶ 7.  That same year, "the State of Maryland issued a producer's license to Ms. Coomes as a nonresident producer."  *Id.* ¶ 8.

According to plaintiff, "[i]n September 2011, [her] agency received two checks from an insurance company made payable to the Employee Benefit Corporation of America."  *Id.* ¶ 9.  The "checks were inadvertently deposited into [plaintiff's] agency's bank account."  *Id.* ¶ 10.

That same month, "the Virginia Department of Insurance (the 'VDI') began an investigation arising out of the inadvertent depositing of the two checks."  *Id.* ¶ 11.  The investigation "was resolved without charges being filed, a hearing being held, factual findings or conclusions of law being made, or a final Order being issued."  *Id.* ¶ 12.  However, plaintiff "signed an agreement with the VDI pursuant to which she voluntarily surrendered her Virginia license" (*id.* ¶ 13), effective March 11, 2013.  *Id.* ¶ 14.

In March 2013, plaintiff sent a letter to the Maryland Insurance Administration, in which she "requested that her Maryland license be changed from a nonresident producer to a resident producer."  *Id.* ¶ 15.  However, "[o]n June 30, 2014, the MIA entered an Order stating that Ms. Coomes's voluntary surrender of her license constituted an 'adverse administrative action' which [she] should have reported to the MIA."  *Id.* ¶ 16.  And, "[t]he MIA determined that Ms. Coomes

---

[6] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Throughout the Memorandum, the Court cites to the electronic pagination.  However, the electronic pagination does not always correspond to the page number imprinted on a particular submission.

had violated the Maryland Annotated Code, Insurance Article, Sections 10-126(a)[1], (6), (12), (13), and (f)." *Id.* ¶ 17.

Plaintiff requested a hearing regarding the MIA order. *Id.* ¶ 18. She alleges that, notwithstanding her timely request for "a full evidentiary hearing to which she was expressly entitled pursuant to Maryland statutes and regulations, the MIA Commissioner held a two hour hearing on November 5, 2014 solely on the MIA's Motion for Summary Disposition." *Id.* ¶ 19. And, plaintiff asserts, *id.* ¶ 20: "Shortly before the hearing, the MIA amended its charges to include new allegations of misconduct for which Ms. Coomes did not have an opportunity to address since neither she nor her counsel were served with the amended Order."

Further, plaintiff asserts that on December 9, 2014, the MIA "improperly permanently revoked" her "insurance producer professional license in a case with no legal precedent." *Id.* ¶ 21. And, "[t]he MIA Commissioner granted the MIA's motion for summary disposition and determined that Ms. Coomes had violated Insurance Article Sections 10-126(a)(1), (6), (12), (13), and (f)." *Id.* ¶ 22.

On or about May 27, 2015, Coomes retained Mr. Moran and the Firm to represent her in an appeal of the administrative action. *Id.* ¶ 23. Plaintiff "executed an engagement agreement and paid a retainer." *Id.* ¶ 24.

Thereafter, Mr. Moran "filed a brief on behalf of Ms. Coomes in the Baltimore City Circuit Court." *Id.* ¶ 25. He also "appeared on behalf of Ms. Coomes for oral arguments in the Baltimore City Circuit Court." *Id.* ¶ 26. The Circuit Court for Baltimore City affirmed the MIA's decision. *Id.* ¶ 27.

Mr. Moran subsequently noted an appeal to the Maryland Court of Special Appeals (the "CSA"), now known as the Appellate Court of Maryland (the "ACM"). *Id.* ¶ 28. He also filed a brief on plaintiff's behalf. *Id.* ¶ 29. In his brief, Mr. Moran raised the following issues, *id.* ¶ 30:

a) Did the Hearing Officer commit reversible error when she failed to rule upon Appellant's objections to jurisdiction and exercised jurisdiction over the Virginia matter?

b) Did the Hearing Officer violate petitioner's procedural rights and thus commit reversible error when she granted the Agency's Motion for Summary Disposition and summarily affirmed the Agency's Amended Order summarily revoking Petitioner's Maryland producer license, finding that Petitioner had committed fraud or other dishonest conduct, where the Commissioner made that finding without the benefit of an evidentiary hearing to determine whether Petitioner had the requisite intent to commit the fraud or dishonest conduct alleged by the Administration?

c) Did the Hearing Officer commit reversible error when she found in a case of first impression, without citation of authority, that Petitioner's voluntary surrender of her Virginia producer's license was an "adverse administrative action," despite the fact that the voluntary surrender was not the result of any formal or informal, final Virginia administrative agency proceeding that included fact finding or resolution of disputed facts, administrative charges, any action, admissions of guilt, findings of fact, conclusions of law or Order?

d) Did the Hearing Officer commit reversible error when she declined to apply the law of Double Jeopardy, the doctrine of Merger or the Rule of Lenity to the Administrative Proceeding?

e) Did the Circuit Court err when it denied the Appellant's Motion for Leave to Offer Additional Evidence?

On January 6, 2017, Mr. Moran appeared on behalf of Ms. Coomes for oral argument before the Maryland Court of Special Appeals. *Id.* ¶ 31. On or about March 30, 2017, the CSA affirmed the Circuit Court "in a reported opinion." *Id.* ¶ 32; *see Coomes v. Maryland Insurance Administration*, 232 Md. App. 285, 157 A.3d 364 (2017).[7] In its decision, the CSA "restated the issues raised by Mr. Moran as follows," *id.* ¶ 33:

---

[7] Plaintiff did not provide the citation to the State case.

a. Whether the Commissioner erred as a matter of law by finding that Coomes's voluntary surrender of her Virginia insurance producer's license was an "adverse administrative action" requiring her to report it to the Maryland Insurance Administration.

b. Whether there is substantial evidence in the record to support the Commissioner's conclusion as a matter of law that Coomes violated Md. Code (2002, 2011 Repl. Vol.), §10–126(a)(1), (6), (12), (13), and (f) of the Insurance Article ("I.A.").

c. 3. [sic] Whether Double Jeopardy applies to shield Coomes from having her Maryland producer's license revoked after previously voluntarily surrendering her Virginia producer's license based on the same underlying set of facts.

d. 4. [sic] Whether the circuit court abused its discretion under Md. Code (1984, 2014 Repl. Vol., 2016 Supp.), § 10–222(f)(2) of the State Government Article ("S.G.") when it denied Coomes's motion to offer additional evidence on the basis that the evidence was not material.

The Maryland Court of Special Appeals concluded that plaintiff's "voluntary surrender" of her Virginia license "was an 'Adverse Administrative Action' and that her failure to report it was a violation of Insurance Article 10-126(1)(13) and (f)." *Id.* ¶ 34. Further, the CSA "determined that substantial evidence supported the MIA's finding that [plaintiff's] failure to report the 'Adverse Administrative Action' and failure to produce 'Relevant Legal Documents' were in violation of Insurance Article Sections 10-126(a)(13) and (f)." *Id.* ¶ 35. In addition, the Maryland intermediate appellate court opined that plaintiff's "intent and subjective belief were not relevant to the issue of whether she violated Insurance Article Sections 10-126(a)(13) and (f)." *Id.* ¶ 36.

In the view of the CSA, "there was substantial evidence to support that Ms. Coomes's actions relating to the inadvertently deposited checks was a violation of Insurance Article, Sections 10-126(a)(1), (6), and (12)." *Id.* ¶ 37. The court also concluded that "the law of double jeopardy did not apply to Ms. Coomes's case" (*id.* ¶ 39), and that "the Circuit Court did not err when it denied Ms. Coomes's motion for leave to offer additional evidence." *Id.* ¶ 40.

On or about May 15, 2017, Mr. Moran filed a petition for a writ of certiorari to the Maryland Court of Appeals. *Id.* ¶ 41. He raised the following issues, *id.* ¶ 42:

a) Did the hearing officer violate Petitioner's procedural rights and err when she granted the agency's motion for summary disposition and revoked Petitioner's Md. Producer license, finding that Petitioner had committed fraud or other dishonest conduct where the Commissioner made that finding without the benefit of an evidentiary hearing to determine whether Petitioner had the requisite intent to commit the fraud or dishonest conduct alleged?

b) Did the hearing officer err when she found that Petitioner's voluntary surrender of her Virginia producer's license was an "adverse administrative action"?

c) Did the hearing officer err when she declined to apply the law of Double Jeopardy, the doctrine of Merger or the Rule of Lenity to the administrative proceeding?

d) Did the trial court err when it denied Petitioner's motion for leave to offer additional evidence?

The Maryland Court of Appeals granted certiorari on or about July 31, 2017. *Id.* ¶¶ 43, 145; ECF 40-1 at 2. Plaintiff posits, ECF 35, ¶ 44: "The SCM grants *certiorari* in meritorious cases that are desirable and in the public interest." According to plaintiff, "[i]n July 2017, the month the SCM granted Mr. Moran's petition, there were over 50 petitions denied and only five (5) granted." *Id.* ¶ 45. And, plaintiff notes that "the SCM reverses approximately 2/3 of the lower Courts' decisions." *Id.* ¶ 46.

Coomes's appellate brief was due in the Maryland Court of Appeals in September 2017. *Id.* ¶ 47. However, plaintiff alleges that Mr. Moran "was purportedly unable to prepare Ms. Coomes's appellate brief due to another client's brief that was due around that same time." *Id.* ¶ 48. Therefore, Mr. Moran moved for an extension of time to file the brief, and the deadline was extended to October 17, 2017. *Id.* ¶¶ 49, 50.

Thereafter, on October 16, 2017, Coomes filed a petition for Chapter 13 Bankruptcy. *Id.* ¶ 51. Plaintiff's bankruptcy lawyer listed plaintiff's professional licensure and her claim against

the MIA as assets of the bankruptcy estate.  *Id.* ¶¶ 52, 53.  Plaintiff also named Mr. Moran and the Firm as creditors.  *Id.* ¶ 54.

Coomes alleges that defendants were subject to the automatic stay under the Bankruptcy Code.  *Id.* ¶ 55.  And, she asserts, *id.* ¶ 103: "Defendants received actual notice of the automatic stay in plaintiff's case from the bankruptcy noticing center and from Ms. Coomes."  Further, plaintiff claims that "the bankruptcy notice provided to Defendants warned that violating the automatic stay could subject it to penalties."  *Id.* ¶ 106.

According to plaintiff, as of October 11, 2017, she "owed Defendants a pre-petition debt in the amount of $1,120.00."  *Id.* ¶ 56.  She alleges that after her bankruptcy filing, Mr. Moran made "billing demands . . . without moving for or obtaining relief from the automatic stay."  *Id.* ¶ 56.  Of relevance here, plaintiff asserts that Mr. Moran's conduct included "holding her appeal hostage by refusing to prepare and file the brief since Ms. Coomes owed a balance . . . ."  *Id.*  And, she contends that "when [she] inquired about the status of the SCM brief while she was in bankruptcy, Mr. Moran replied by email writing, 'this is what I have so far,'" and "attached only his invoice to [the] email."  *Id.*

Mr. Moran filed a second motion for an extension of time to submit his appellate brief.  *Id.* ¶ 57.  The Maryland Court of Appeals granted the request, and extended the filing deadline to February 21, 2018.  *Id.* ¶¶ 57, 58.  Subsequently, Mr. Moran filed a third motion to extend time to submit his brief.  *Id.* ¶ 59.  But, on February 20, 2018, the Maryland Court of Appeals denied Mr. Moran's request.  *Id.* ¶ 60.  Plaintiff alleges that "Mr. Moran had not even begun working on the appellate brief at that time."  *Id.*  And, on February 21, 2018, Mr. Moran failed to file the brief that was due in the SCM.  *Id.* ¶ 61.

Coomes alleges that Mr. Moran refused to prepare and file the appellate brief because she owed him money. *Id.* ¶¶ 56, 61. Moreover, plaintiff claims that, despite her request, Mr. Moran failed to file a belated, untimely brief, with the request to the Maryland Court of Appeals to deem it timely. *Id.* ¶ 62. Moreover, she claims that Mr. Moran refused to email a "Microsoft Word" version of the "brief so she could try to cobble together the brief, file it late, and ask for the Court to deem it timely filed." *Id.* ¶ 63. Coomes also asserts that Mr. Moran "constructively withdrew" his representation without leave of court. *Id.* ¶ 64. But, she claims that if he had filed a motion to withdraw, Coomes would have had an additional fifteen days to file her brief. *Id.* ¶ 65.

Notably, Mr. Moran allegedly advised Coomes that "filing the brief was not necessary because the SCM could rule on her case by reviewing what had already been filed with the ACM" (*id.* ¶ 66), and that "the SCM did not intend to dismiss her appeal because it had scheduled oral arguments" for May 2, 2018. *Id.* ¶ 67; *see also id.* ¶ 66. And, Mr. Moran allegedly told Coomes "that the SCM could not dismiss her appeal because she was in bankruptcy and protected by the automatic stay of bankruptcy." *Id.* ¶ 69.

However, "[o]n March 4, 2018, the MIA moved to dismiss Ms. Coomes's appeal for failure to file the appellate brief." *Id.* ¶ 68. Mr. Moran filed an Opposition three days later. *Id.* ¶ 70. On March 8, 2018, the Maryland Court of Appeals dismissed Coomes's appeal, with prejudice, for failure to file the appellate brief. *Id.* ¶ 71. An amended order of dismissal was filed on March 27, 2018. *Id.* ¶ 72. Then, "[o]n March 29, 2018, the Court issued a revised final order of dismissal." *Id.* ¶ 73. And, "[o]n April 9, 2018, the Court issued the mandate." *Id.* ¶ 74.

Plaintiff alleges that "Mr. Moran correctly identified that the ACM erred in Ms. Coomes's case," and that "[t]he decisions of the MIA, the Circuit Court and the ACM were contrary to

Maryland law and United States Supreme Court authority and unconstitutional." *Id.* ¶ 75.  Further, plaintiff alleges, *id.* ¶ 76:

> The Commissioner violated Ms. Coomes's procedural rights and erred when the Commissioner granted the MIA's motion for summary disposition and revoked Ms. Coomes's Maryland Producer license, finding that Ms. Coomes had committed fraud or other dishonest conduct where the Commissioner made that finding without the benefit of an evidentiary hearing to determine whether Ms. Coomes's had the requisite intent to commit the fraud or dishonest conduct alleged.

According to plaintiff, "[t]he Commissioner erred when she held that Ms. Coomes's voluntary surrender of her Virginia producer's license was the final disposition of an adverse administrative action" and "when she declined to apply the law of Double Jeopardy, the doctrine of Merger or the Rule of Lenity to the administrative proceeding."  *Id.* ¶¶ 77, 78.  And, plaintiff contends*, id.* ¶ 79: "The Circuit Court erred when it denied Ms. Coomes's motion for leave to offer additional evidence."  Plaintiff posits, *id.* ¶ 80: "Had Mr. Moran filed a brief, the SCM would have reversed the rulings of the ACM, the Circuit Court, and the MIA."  And, she asserts, *id.* ¶ 81: "Had Mr. Moran filed a brief, the MIA's decision to revoke [plaintiff's] Maryland producer license would have been reversed and her license reinstated."

Plaintiff contends that, due to the negligence of defendants, she "has suffered substantial and irreversible damages in that she can no longer operate as an insurance producer, operate her insurance business, or hold another high paying job."  *Id.* ¶¶ 91, 101.  And, she alleges that Mr. Moran's "intentional harass[ment]," *id.* ¶ 104, caused her "sleepless nights and other significant emotional harm distinct from the inherent stress of the normal bankruptcy process."  *Id.* ¶ 105.

Additional facts are discussed,  *infra*.

## Standard of Review

### A.

The Motion is titled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See* ECF 40, ECF 40-1.  Defendants have not styled the Motion in the alternative, as one for summary judgment. Indeed, defendants *distinguish* their Motion from one for summary judgment, stating: "This Court may consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment."  *Id.* at 8 n.6 (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).

In her Opposition, plaintiff argues that, "[i]n a document titled 'motion to dismiss,' Defendants attempt to short circuit the procedural process and demand this court do what the [SCM] refused to do; render a dispositive decision on the merits without the benefit of the full record and a briefing of the issues."  ECF 43-1 at 1.  According to plaintiff, "[f]or this Court to properly address the issues raised by Defendants, . . . this Court must require the parties to proceed under the Maryland Rules and submit those filings that should have been submitted to the SCM by Defendants."  *Id.* at 9.  Plaintiff argues, *id.* at 11 (footnote omitted):

> If, as Defendants argue, this Court is the arbiter of how the SCM would have ruled on this matter, this Court must have all of the materials that the SCM requires under the Maryland Rules, including the motion for summary disposition with exhibits, the opposition thereto with exhibits, as well as the transcripts from the hearings. Because this Court does not have the benefit of such documents, it must deny Defendants' motion to dismiss and allow the parties to proceed with the litigation.

In their Reply, in response to plaintiff's contentions, defendants submitted numerous exhibits, including the record extract submitted to the CSA, briefs submitted by the parties to the CSA, and a transcript of the oral argument held before the CSA.  *See* ECF 46-1 to ECF 46-11.

They argue that, based on these exhibits, "there can be no disputes of material fact . . . ."  ECF 46 at 2.

As I see it, defendants seek, in effect, to convert their Motion to one for summary judgment. A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Hous., LLC v. City of Salisbury*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam) ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

To be sure, when the movant expressly captions its motion in the alternative, as one to dismiss or for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion to summary judgment under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.  However, defendants did not provide such notice to plaintiff.

Therefore, I decline to convert the motion to one for summary judgment.  Moreover, as the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask."  *McCray v. Md. Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).

Accordingly, I shall construe the Motion as one to dismiss.  This implicates Rule 12(b)(6).

**B.**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.*  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304–05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at

555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from

14

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

Additionally, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it

included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

## C.

Ordinarily, when ruling on a motion to dismiss, a court "is not to consider matters outside the pleadings . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). Here, defendants submitted several exhibits with their Motion and the Reply. As a preliminary matter, I must determine which exhibits, if any, are subject to consideration at this stage of the case.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger*, 510 F.3d at 450.

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.*, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  But, "[a] federal district court may take judicial notice of documents from state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment." *Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023) (quoting *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n. 2 (D. Md. 2013)) (alteration in *Parikh*).  However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In the Motion, defendants argue that, taking the underlying record into account, the Maryland Court of Appeals would not have found in favor of Coomes.  *See, e.g.*, ECF 40-1 at n.5.  They filed one exhibit with their Motion.  ECF 40-2.

In her Opposition, plaintiff argues: "After failing to provide the SCM with a full record and briefing of the issues, Defendants demand that this Court render a dispositive decision on the merits without the benefit of the full record and briefing of the issues."  ECF 43-1 at 1.  Further, plaintiff urges the Court to deny the Motion because it "is based upon an incomplete record and presentation of the facts that would have been available to the SCM."  *Id.*  And, she asserts: "For this Court to properly address the issues raised by Defendants, . . . this Court must require the

parties to proceed under the Maryland Rules and submit those filings that should have been submitted to the SCM by Defendants." *Id.* at 9; *see also id.* 9–11.

In response to those contentions, defendants submitted eleven exhibits, in excess of 560 pages, with their Reply. ECF 46; ECF 46-1 to ECF 46-11. Defendants contend that, with the submission of these exhibits, "there can be no disputes of material fact, or additional information that can be presented for this Court's consideration, as the sole question in Defendant's Motion to Dismiss (and at issue in this litigation) is whether the SCM would have affirmed the decisions of the MIA, the Circuit Court for Baltimore City and the ACM." ECF 46 at 2.

ECF 40-2 is the Opinion and Order dated December 5, 2014, issued by the Maryland Insurance Commissioner.

ECF 46-1 to ECF 46-3 are pleadings submitted to the ACM. Specifically, ECF 46-1 is the Appellant's Brief and Appendix; ECF 46-2 is the Appellee's Brief; ECF 46-3 is the Appellant's Reply Brief.

ECF 46-4 to ECF 46-10 contain the Joint Record Extract submitted by the parties to the CSA. Defendants explain that, "[d]ue to the large file size of the Record Extract," it "was divided into seven parts . . . ." ECF 46 at 1 n.1. The Joint Record Extract includes documents and pleadings that the parties jointly submitted to the CSA for consideration in Coomes's appeal. ECF 46-11 is the transcript of the oral argument before the CSA on January 6, 2017. *See also* ECF 35 at ¶ 31.

Defendants urge the Court to consider ECF 40-2 because "[t]he facts in [ECF 40-2] are subject to judicial notice as they are integral to the claims and their accuracy cannot be questioned." ECF 40-1 at 8–9 n.6. However, in their Reply, defendants fail to explain why ECF 46-1 through ECF 46-11 should be considered at this juncture.

Defendants offer only boilerplate argument in support of the claim that ECF 40-2 is integral to the Complaint.  But, they fail to explain why the exhibits submitted with the Reply are integral.  Nevertheless, the exhibits are public documents, either from the proceedings before the MIA (ECF 40-2) or the proceedings before the CSA (ECF 46-1 to ECF 46-11).  Although they are subject to judicial notice, *see, e.g.*, *Goldfarb*, 791 F.3d at 508, I decline to consider them in the context of a Rule 12(b)(6) motion, particularly where they were submitted with the Reply, not the Motion, and plaintiff has not had an opportunity to respond.

### III. Discussion

#### A.  Counts I and II (Professional Negligence)

In Counts I and II, Coomes asserts nearly identical claims of professional negligence against Mr. Moran (Count I) and the Firm (Count II).  I pause to emphasize that at this stage of the case, plaintiff need not prove anything; whether she prevails is not relevant.  The only question is whether she has adequately stated a claim.

As a preliminary matter, a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  The law of the forum state, Maryland, guides this Court's choice-of-law analysis.  *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011).

For tort claims, Maryland applies the principle of *lex loci delicti*, *i.e.*, the law of the "place of the alleged harm."  *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007).  Because the underlying incident occurred in Maryland (*see* ECF 35, ¶¶ 2–4; *see generally id.*),

Maryland's substantive tort law governs plaintiff's claims of negligence. *See Hauch v. Connor*, 295 Md. 120, 123–24, 453 A.2d 1207, 1209 (1983).[8]

"In Maryland, professional malpractice is a type of negligence action." *Pisner v. McCarthy*, 630 F. Supp. 3d 690, 704 (D. Md. 2022), *motion for relief from judgment denied*, SAG-22-00019, 2023 WL 2648791 (D. Md. Mar. 27, 2023) (citation omitted). And, "to assert a claim in negligence, the plaintiff must [allege]: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131–32, 916 A.2d 257, 270–71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

The cornerstone allegation in the suit is that "Mr. Moran failed to prepare and file Ms. Coomes's appellate brief," which led to the dismissal of her case. ECF 35 at 8. "The elements required to [assert] a cause of action for professional negligence are equivalent to the elements

---

[8] Although the substantive law of Maryland governs plaintiff's claims, the federal rules of procedure apply to determine "whether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law[.]" *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982); *accord Jordan v. Iverson Mall Ltd. P'ship*, GJH-14-37, 2018 WL 2391999, at *5 (D. Md. May 25, 2018); *Osunde v. Lewis*, 281 F.R.D. 250, 260 (D. Md. 2012); *Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009).

required in a standard negligence action; the professional, however, is held to the standard of care that prevails in his or her profession." *Balfour Beatty Infra., Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 438, 130 A.3d 1024, 1035 (2016).

In Maryland, "[t]o prevail on a claim for legal malpractice, a former client must prove '(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty.'" *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 239, 992 A.2d 413 (2010) (quoting *Thomas v. Bethea*, 351 Md. 513, 528–29, 718 A.2d 1187 (1998)); *Cavacos v. Sarwar*, 313 Md. 248, 253, 545 A.2d 46 (1988); *Kendall v. Rogers*, 181 Md. 606, 611, 31 A.2d 312 (1943).

In Count I, plaintiff alleges that Mr. Moran breached the standard of care.  ECF 35 at 83. Specifically, plaintiff alleges that "Mr. Moran breached the duty of care owed to Ms. Coomes when he failed to timely file the appellate brief with the SCM," *id.* ¶ 84, and "when he failed to provide her with the opportunity and means to file the appellate brief on her own behalf."  *Id.* ¶ 85.  Further, plaintiff alleges that "Mr. Moran breached the standard of care when he advised Ms. Coomes that the SCM appeal was subject to the automatic stay," *id.* ¶ 86; "when he advised Ms. Coomes that she did not need to file an appellate brief with the SCM," *id.* ¶ 87; and "when he engaged in aggressive collection efforts, actions against Ms. Coomes, and actions against her bankruptcy estate without moving for or obtaining relief from the automatic stay." *Id.* ¶ 88.

Further, plaintiff alleges that, "[i]f Mr. Moran had not breached the standard of care owed to Ms. Coomes, the SCM would have reversed the rulings of the ACM, the Circuit Court and the MIA," *id.* ¶ 89, and "the rulings of the MIA revoking her license would have been reversed and her license been reinstated."  *Id.* ¶ 90.  Thus, plaintiff alleges that, "[a]s a direct and proximate result of the negligence of Mr. Moran, Ms. Coomes has suffered and continues to suffer substantial

and irreversible damages in that she can no longer operate as an insurance producer, operate her insurance business, or hold another high paying job." *Id.* ¶ 91.

Count II's allegations against the Firm are nearly identical to those contained in Count I against Mr. Moran.  In Count II, plaintiff alleges, *id.* ¶ 93: "Standards of care prevail under which the Law Firm is required to practice."  She asserts that the Firm breached its duty and standard of care "through its agents." *Id.* ¶¶ 94–101.

In *Fishow v. Simpson*, 55 Md. App. 312, 323, 462 A.2d 540, 546 (1983), focusing on the third element, the Maryland Court of Special Appeals stated that, unless the client "has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney even though the latter were guilty of gross negligence."  In support of this proposition, the court cited the case of *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949). There, the court explained, *id.* (*see* 7A C.J.S. Attorney & Client § 258 (1980)):

> The rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be; or that if conduct of an attorney with respect to litigation results in no damage to his client the attorney is not liable.

The Fourth Circuit has said: "In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder.  Where . . . resolution of the causation issue is dependent upon expert opinion testimony, it must meet that standard." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993) (internal citations omitted).

Thus, in order to recover, the client must establish that, but for the lawyer's negligence, she probably would have prevailed in the underlying action, and that the litigant was harmed by the lawyer's conduct. *Cf. Riordan v. Jones*, 793 F.Supp. 650, 651 (D. Md. 1992) ("[T]he matter

23

for which the attorney was engaged must have had sufficient merit that any malpractice actually caused damages to the plaintiff. This requires that the malpractice plaintiff demonstrate merit in the underlying claim . . . .") (citing *Fishow*, 55 Md. App. at 323, 462 A.2d at 546), *aff'd*, 989 F.2d 494 (4th Cir. 1993); *see Brown v. E.W. Bliss Co.*, 72 F.R.D. 198, 200 (D. Md. 1976) (stating that to recover under a malpractice theory against their attorney, the plaintiffs need "prove that they had a proper claim and are entitled to damages, and further allege and show that their failure to recover on their claim was due to the negligence of their attorney").

In their Motion, defendants argue that Counts I and II are subject to dismissal, "as a matter of law, as Plaintiff has failed to plead facts establishing that Defendants' alleged acts and/or omissions were the proximate cause of her alleged damages." ECF 40-1 at 2.  Importantly, defendants argue that "[t]he trial-within-a-trial doctrine is applicable to the instant case." *Id.* at 4 (underlining removed).  They posit, *id.*: "The trial-within-a-trial doctrine is 'the accepted and traditional means of resolving issues involved in the underlying proceeding in a legal malpractice action.'"  (Quoting *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 241, 992 A.2d 413, 419 (2010)).  Defendants add, ECF 40-1 at 5 (quoting *Suder*, 413 Md. at 233, 992 A.2d at 414):

> When the doctrine is applicable, the litigants reconstruct the underlying action, absent the supposed breach of duty. The tribunal must not only determine how the parties would have proceeded had there been no breach, but must also assume the role of the earlier adjudicator in order to ascertain the probable outcome of the action. Simply put, the court must try a case within a case.

Thus, defendants contend, ECF 40-1 at 5:

> Accordingly, in order to establish that Defendants' alleged acts and omissions were the proximate cause of her alleged damages, Plaintiff must prove that had a timely brief been filed with the Supreme Court of Maryland (hereafter "SCM"), the reported decision of the Appellate Court of Maryland (hereafter "ACM") (affirming the decisions of the Maryland Insurance Administration and Circuit Court for Baltimore City revoking Plaintiff's license) would have been reversed. The determination of whether Plaintiff would have prevailed on appeal is a question of law for the Court to decide.[]

Defendants do not contest the first two prongs of the elements of the claim.  Indeed, it would be difficult for defendants to justify the failure of defendants to file a brief with the Maryland Court of Appeals after certiorari was granted.

Instead, defendants contest causation.  They argue that plaintiff's claims must be dismissed because "Defendants were not the proximate cause of Plaintiff's alleged damages." *Id.* at 6.  In particular, they aver, *id.*: "Plaintiff would not have prevailed in her appeal to the SCM, and therefore her claims for professional negligence fail as a matter of law."

Defendants offer five reasons why plaintiff would not have prevailed (emphasis removed for all quotations): (1) "The Commissioner did not err in finding that Plaintiff's voluntary surrender of her Virginia producer's license was an 'adverse administrative action' that she was required to report to the MIA," *id.* at 7; (2) "There was substantial evidence in the record to support the Commissioner's finding as a matter of law that Plaintiff violated I.A. § 10-126(a)(1), (6), (12), (13), and (f) that resulted in the revocation of her Maryland producer's license," *id.* at 10; (3) "The Commissioner conducted a full evidentiary hearing on the charges brought against Plaintiff by the MIA as required by the statute," *id.* at 13; (4) "The doctrines of Double Jeopardy, Merger, and the Rule of Lenity did not apply to this administrative proceeding," *id.* at 5, and; (5) "The Circuit Court for Baltimore City did not abuse its discretion when it denied Plaintiff's motion to offer additional evidence on the basis that the evidence was not material," *id.* at 18.

In her Opposition, plaintiff contends that, "[i]n a document titled 'motion to dismiss,' Defendants attempt to short circuit the procedural process and demand this court do what the [SCM] refused to do; render a dispositive decision on the merits without the benefit of the full record and a briefing of the issues."  ECF 43-1 at 1.

Moreover, plaintiff argues that she has met the standard in *Suder*, 413 Md. 230, 992 A.2d 413 (2010).  *Id.* at 7–8.  She explains, *id.* at 8:

> (i) [S]he retained Defendants to represent her in her appeal; (ii) Defendants breached their duties owed to her by, among other things, failing to file an appellate brief; and (iii) if Defendants had not breached their duty and filed an appellate brief, the SCM would have overturned the decision of the MIA and her license would have been restored.

Plaintiff concedes that "Defendants correctly assert that '[Ms. Coomes] must prove that had a timely brief been filed with the [SCM], the reported decision of the [ACM] (affirming the decisions of the Maryland Insurance Administration and Circuit Court for Baltimore City revoking Plaintiff's licensee) would have been reversed.'"  *Id.* (alterations in ECF 43-1).  But, she maintains that, although she "intends to prove her case, she is not required to do so at this stage of the litigation."  *Id.*  In her view, the defense "arguments are premature at this stage. Ms. Coomes's [sic] has sufficiently alleged, which allegations are deemed to be true for purposes of this motion, that the SCM would have reversed the rulings of the MIA."  *Id.* at 11 n.17.

Plaintiff provides four reasons why she would have prevailed on appeal.  These include (capitalizations removed): (1) "Ms. Coomes's voluntary surrender of her license was not the final disposition of an adverse administrative action that she was required to report," *id.* at 11; (2) "Ms. Coomes was entitled to a full evidentiary hearing," *id.* at 13: (3) "The Commissioner improperly upheld charges for conduct occurring in another state," *id.* at 18, and; (4) "The Circuit Court improperly denied Ms. Coomes's Motion for Leave to Offer Additional Evidence," *id.*

As noted, defendants submitted numerous exhibits with their Reply, which they allege would have been considered by the Maryland Court of Appeals.  ECF 46 at 1.  And, they argue, *id.* at 2: "Therefore, there can be no disputes of material fact, or additional information that can be presented for this Court's consideration, as the sole question in Defendants' Motion to Dismiss

(and at issue in this litigation) is whether the SCM would have affirmed the decisions of the MIA, the Circuit Court for Baltimore City and the ACM."

Defendants are correct that the trial-within-a-trial doctrine is the predominant way courts resolve these kinds of malpractice disputes. But, defendants fail to clarify that this framework is applicable when the court is adjudicating a *motion for summary judgment*—not when it is adjudicating a motion to dismiss.

Indeed, the cases provided by defendants appear to utilize this framework within the context of a motion for summary judgment or an appellate review of a lower court's decision regarding a summary judgment motion. *See, e.g.*, *Suder*, 413 Md. 230, 992 A.2d 413 (2010); *Berringer v. Steele*, 133 Md. App. 442, 758 A.2d 574 (2000) (Hollander, J.); *Fishow*, 55 Md. App. 312, 462 A.2d 540 (1983). Others involve judicial opinions regarding verdicts following a jury trial. *See, e.g.*, *Bethea*, 351 Md. 513, 718 A.2d 1187 (1998); *Daugert v. Pappas*, 104 Wash. 2d 254 (Wash. 1985). And, a review of relevant case law reveals the same. *See, e.g.*, *Saunders v. Markey*, No. 1439, Sept. Term 2020, 2021 WL 5112505 (Md. Ct. Spec. App. Nov. 3, 2021) (motion for summary judgment); *Old Republic Nat'l Title Ins. Co. v. Shulman, Rogers, Gandal, Pordy & Ecker, P.A.*, TDC-18-3695, 2019 WL 6840729, at *1 (D. Md. Dec. 16, 2019) (motion for summary judgment), *aff'd sub nom. Old Republic Nat'l Title Ins. Co. v. Shulman, Rogers, Gandal, Pordy & Ecker, PA*, 855 F. App'x 862 (4th Cir. 2021).

As indicated, defendants did not move for summary judgment. The Motion relies on facts extraneous to the Complaint. Although defendants appended multiple exhibits to the Reply, plaintiff lacked an opportunity to respond. And, the Motion was not styled as a motion for summary judgment.

Further, it is not evident that defendants have filed all documents that the Maryland Court of Appeals would have had before it.  And, defendants have failed to provide the Court with plaintiff's petition for certiorari and the ruling dismissing the case, with prejudice.

The underlying issues appear to implicate matters of first impression for the SCM.  And, the grant of certiorari is not an everyday occurrence.  At this stage, the Court is not in a position to speculate as to how the Maryland high court would have ruled.

In sum, plaintiff has alleged a claim sufficient to satisfy the standard in *Suder*, 992 A.2d 413 (2010).  Accordingly, I shall deny defendants' Motion as to Counts I and II.

### B.  Count III (Violation of the Automatic Stay)

In Count III, plaintiff alleges that defendants violated the automatic stay when Mr. Moran requested payment for his legal services and "constructively withdrew" from her case due to her lack of payment.

Plaintiff fails to cite a particular statute under which her claim arises.  But, she appears to rely on 11 U.S.C. § 362.  Section 362(a)(6) states (emphasis added):

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
> . . .
> (6) any act to collect, assess, or recover a claim against the debtor that *arose before* the commencement of the case under this title . . .

In the Motion, defendants argue: "Plaintiff has failed to plead facts establishing that Defendants violated the Bankruptcy Stay, and in particular that Defendants attempted to collect a Pre-Petition Debt."  ECF 40-1 at 2.  They contend that plaintiff fails to "identify when the debt was incurred, what the debt was for, or any collection attempt whatsoever."  *Id.* at 3.  Further,

28

defendants argue that plaintiff failed to articulate how defendants violated the stay and the demands they made. *Id.* at 20.

Defendants steadfastly argue that the debts were post-petition debts, and that "Defendants' requirement that Plaintiff pay for this post-petition service (or bring her account back into balance before they will perform additional/new work for her) does not constitute a violation of the Bankruptcy Stay." *Id.* at 21. In their view, the Complaint suggests that plaintiff expected defendant to "work on her appellate brief for free." *Id.* at 20.

In her Opposition, plaintiff asserts, ECF 43-1 at 8:

> Ms. Coomes filed a petition for bankruptcy on October 16, 2017. Defendants were creditors of Ms. Coomes and subject to the automatic stay of the United States Bankruptcy code. As of October 11, 2017, Ms. Coomes owed Defendants a pre-petition debt in the amount of $1,120.00. Subsequent to Ms. Coomes's bankruptcy filing, however, Mr. Moran made billing demands and engaged in aggressive collection efforts (including holding her appeal hostage by refusing to prepare and file the brief since Ms. Coomes owed a balance) without moving for or obtaining relief from the automatic stay. Contrary to Defendants' assertions, Defendants demands for payment were for pre petition debts and were made post her bankruptcy filing in violation of the automatic stay.

At this juncture, plaintiff has sufficiently alleged that defendants attempted to collect pre-petition debts. Specifically, plaintiff cites to one incident where, in response to asking for a draft of her brief, defendant replied to an email with an invoice for charges previously incurred. Plaintiff persuasively argues that this action was intended to show that he held her appeal "hostage by refusing to prepare and file the brief since Ms. Coomes owed a balance . . . ." *Id.* ¶ 56. This would appear to be a violation of the stay.

As such, I will deny the Motion with respect to Count III.

### IV.  Conclusion

In light of the foregoing, I shall deny the Motion.  An Order follows, consistent with this Memorandum Opinion.

Date: January 9, 2024                                   _____/s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge